UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ZAIRE PAIGE,

              Plaintiff,

        -against-

THE CITY OF NEW YORK; OFFICER
PEREZ; JUDGE V. DELGUIDICE[1]; JUDGE
W. MCGUIRE; ASSISTANT DISTRICT
ATTORNEY T. GOUGH; POLICE OFFICER
RASHAN LACOSTE,

              Defendants.
------------------------------------------------------------x



**MEMORANDUM AND ORDER**

10-CV-5469 (SLT)(RER)

**TOWNES, United States District Judge:**

    Plaintiff Zaire Paige, who is currently incarcerated at Rikers Island, brings this *pro se* action against the City of New York, two New York Police Department ("NYPD") officers, and two judges and an assistant district attorney ("ADA") involved in criminal proceedings against him. Although plaintiff's 128-page complaint touches upon issues raised in complaints which have been previously filed by plaintiff and his grandmother, Bettie Paige, this action pertains primarily to events that occurred prior to and during plaintiff's recent criminal trial in the Kings County Supreme Court.

    For the reasons set forth below, this Court now dismisses the two judges from the action. In addition, the Court dismisses those claims against ADA Gough which relate to conduct intimately associated with the judicial phase of the criminal process and those claims against Officer Perez which relate to his conduct or testimony at plaintiff's trial. The Court grants

---

[1] The Court takes judicial notice of the correct spelling of Justice Vincent M. Del Giudice's name and henceforth refers to him properly.

plaintiff leave to amend his complaint in order to explain the basis of any remaining claims against defendants Gough and Perez and the basis of his claims against the City of New York.

## BACKGROUND

This is the third action brought by Zaire Paige and/or his grandmother, Bettie Paige, since mid-July 2010. The first of these actions – *Paige v. LaCoste*, E.D.N.Y. Docket No. 10-CV-3356 (SLT) – relates primarily to incidents which occurred following Mr. Paige's arrest in May 12, 2009, by defendant Rashon LaCoste and other officers in the 73rd Precinct. Mr. Paige alleges, *inter alia*, that he was beaten by these officers and caused to swallow a key; subjected to medical treatment without his consent; "slandered" by officers who publicly accused him of committing seven murders; then held on fabricated charges for a prolonged period without being brought before a judge. Mr. Paige further alleges that when he appeared in Supreme Court on June 18, June 22, and July 3, 2009, his case was not listed on the calendar posted in the lobby of the 350 Jay Street, Brooklyn, courthouse, to discourage family members from attending his proceedings.

In the second action – *Paige v. City of New York Police Dep't 73rd Precinct*, E.D.N.Y. Docket No. 10-CV-3773 (SLT) – Ms. Paige alleges that a "splinter group" of New York City police and corrections officers are menacing, stalking, and attempting to harm her in retaliation for complaints she made to the Civilian Complaint Review Board, the NYPD's Internal Affairs Bureau, and others about the treatment of Mr. Paige. Ms. Paige primarily alleges that she herself has been subjected to retaliation, claiming that she has been the target of police surveillance and wiretaps; that her calls to and from Mr. Paige and others have been blocked; that someone has broken into, and installed a tracking device in, her automobile and has repeatedly damaged its tires; that someone stole her identification during a visit to Mr. Paige on Rikers Island in an effort to have her arrested; that she was banned from Rikers Island on two occasions; and that she was

falsely arrested following a traffic stop on September 15, 2008. However, Ms. Paige also claims that Mr. Paige has been subjected to retaliation, alleging, *inter alia*, that his criminal case has been repeatedly delayed. In addition, the complaint in the second action alleges that unnamed persons at Rikers Island staged a riot on March 26, 2010, and falsely accused Mr. Paige of instigating it; placed Mr. Paige in solitary housing and flooded his cell with the intent of causing a toxic, black mold to grow therein; and enabled other inmates to assault Mr. Paige on June 18 and 19, 2009.

The complaint in this fee-paid action, which was filed on November 24, 2010, repeats many of the allegations contained in the two prior actions. For example, the complaint alleges that plaintiff was brutally tortured by Rashon LaCoste and his fellow officers on May 12, 2009 (Complaint at 2-3); was subjected to medical treatment without his consent on May 13, 2009 (*id.* at 3); was framed for the March 2010 riot at Rikers Island (*id.* at 8); was placed in a position that enabled fellow inmates to attack him on June 18 and 19, 2010 (*id.*); and was exposed to toxic mold after his cell was flooded (*id.* at 8).[2] The complaint also alleges that Ms. Paige was subjected to surveillance (*id.* at 7).

However, the instant complaint focuses primarily on Mr. Paige's treatment during two separate state criminal proceedings: Criminal Court proceedings stemming from plaintiff's 2008 arrests and plaintiff's Fall 2010 trial on murder charges in Kings County Supreme Court. With respect to the former, the complaint principally alleges that defendant McGuire – the Brooklyn Criminal Court judge presiding over Mr. Paige's 2008 cases – unconstitutionally delayed the proceedings in order "to protect the Police of the 73rd Precinct who . . . charged [Mr. Paige] with

---

[2]Since plaintiff did not number the pages in his complaint, this Court will use the computer-generated numbers assigned to each page when plaintiff's complaint was scanned into the Court's electronic case filing system.

3

Assault[ing] . . . them" (*Id.* at 20). In addition, the complaint suggests that defendant Judge McGuire kept moving his assigned courtroom, posting misleading information concerning the courtroom where Mr. Paige was to appear, and calling Mr. Paige's case last on the calendar – all in an effort to keep Ms. Paige and other relatives from attending his court appearances (*Id.* at 5, 18-19, 17-22, 56).

With respect to the Supreme Court proceedings, the complaint accuses defendant Del Giudice, the Acting Supreme Court Justice who presided over plaintiff's murder trial in late October/early November 2010, of misconduct and of conspiring with the prosecutor, defendant Gough, "to satisfy and to aide [*sic*] in a . . . cover-up for . . . a splinter group [of officers] involved in 'Corruption'" (*Id.* at 93). The complaint alleges, *inter alia*, that Justice Del Giudice made "insulting . . . and wise comments during arguements [*sic*] before, during and after trial" (*id.* at 5), favored the prosecution (*id.* at 89), "allowed the case to be rigged by . . . Gough," (*id.* at 63), and otherwise denied Mr. Paige a fair trial. The complaint specifically alleges that Justice Del Giudice had Mr. Paige removed from the courtroom "[d]uring most of his trial and the most important part of it" largely "because of one outburst" during LaCoste's testimony (*Id.* at 64, 92). In addition, the complaint implies that Justice Del Giudice made errors at trial, including permitting a co-defendant's separate jury to hear testimony against plaintiff, "with intention . . . to 'SWAY THE JURY'" against Mr. Paige (*id.* at 83, 92-93).

The complaint makes similar allegations against defendant Gough. The complaint states that "[f]rom the start of Mr. Paige['s] trial to the end," ADA Gough attempted to prejudice the jury against Mr. Paige by impugning his character, suggesting that Mr. Paige's supporters were engaged in witness tampering, bringing additional police officers into court "just to make Mr. Paige appear to be sort of a big time gang leader," and making "wild and evasive comments

4

under his breath loud enough to be heard by [the jury]" (*Id.* at 63). The complaint also implies that someone in the District Attorney's Office – presumably, Mr. Gough – failed to afford plaintiff the opportunity to testify before the Grand Jury (*id.* at 2), while permitting the officers responsible for the May 12, 2009, "torture" of Mr. Paige to testify against him (*id.* at 4); "prepped [paid informants] to lie" about Mr. Paige in exchange for favorable treatment in their own cases (*id.* at 3); and "suppressed information" favorable to Mr. Paige (*id.* at 58).

The complaint also makes allegations concerning an Officer Perez of the 77th Precinct, who allegedly testified at Mr. Paige's trial. The complaint principally alleges that Perez, who purportedly previously perjured himself in an unrelated case involving a September 1997 murder on Utica Avenue, perjured himself in Mr. Paige's case as well (*id.* at 87). In addition, Perez showed "a hatred" for Mr. Paige in court, gazing at him "with such animosity" as to lead Ms. Paige to believe that Perez "would have caused harm to [Mr. Paige]" had no one else been present (*id.* at 64).

The complaint in this case principally seeks three remedies. First, the complaint requests that this Court conduct an investigation into the allegedly corrupt activities of the "splinter group" of policemen and corrections officers, including an investigation into whether promises of favorable treatment prompted "paid informants" to perjure themselves at trial (*id.* at 126, 128). Second, the complaint seeks a declaration that Mr. Paige's constitutional rights – including his right to a fair trial – were violated by this corruption, and demands that Mr. Paige be released from custody and given "a fair and just" trial (*id.* at 127-28). Third, plaintiff seeks damages for "being falsely [p]rosecuted based on lies, written by [p]olice" (*id.* at 128).

## DISCUSSION

### *Standard of Review*

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or that the court lacks jurisdiction over the matter. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-364 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3). An action is frivolous as a matter of law when, *inter alia*, it is "based on an indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law . . . , or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 473 (2d Cir. 1998). Thus, "[a] complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). However, a document filed *pro se* is to be liberally construed, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). A *pro se* complaint should not be dismissed without granting the *pro se* plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) *(per curiam)*.

As explained below, this Court cannot grant any of the relief sought by plaintiff in this case, aside from money damages. Moreover, it is clear that most of the individual defendants named in this action enjoy absolute immunity with respect to some, if not all, of the claims advanced by plaintiff. Finally, plaintiff's complaint does not state a cause of action against the

City of New York. However, since it is unclear precisely what claims plaintiff seeks to raise against defendants Gough and Perez, and unclear whether plaintiff has a basis to state a claim against the City of New York, this Court will, in an abundance of caution, afford plaintiff leave to amend the complaint.

*Available Remedies*

Before analyzing plaintiff's claims against the various defendants, this Court notes that it cannot grant most of the relief sought in plaintiff's complaint. First, this Court is not empowered to conduct investigations. "[C]riminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution." *Solomon v. H.P. Action Center, H.P.D.*, No. 99 Civ. 10352 (JSR), 1999 WL 1051092, at *1 (S.D.N.Y. Nov. 19, 1999). Moreover, "[a] private citizen does not have a constitutional right to . . . compel the initiation of criminal proceedings." *Lis v. Leahy*, No. CIV-90-834E, 1991 WL 99060 at *1 (W.D.N.Y. June 3, 1991); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another").

In addition, plaintiff cannot, at this juncture, request that this Court 1) order plaintiff released from state custody or 2) issue a declaratory judgment concerning the constitutionality of the state court proceedings. Plaintiff can seek this relief only upon a petition for a writ of habeas corpus, which should be filed after plaintiff has fully exhausted his state court remedies. *See* 28 U.S.C. § 2254. Accordingly, plaintiff must first proceed with his direct appeal in state court. If his appeal proves unsuccessful, he may file his petition for a writ of habeas corpus at any time

during the one-year period after the New York Court of Appeals rules on his case. *See* 28 U.S.C. § 2244(d).

### *Judicial, Prosecutorial, and Witness Immunity*

While plaintiff can pursue claims for money damages, many of the defendants named by plaintiff are absolutely immune from such claims. First, "[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Since this "judicial immunity is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself,'" *id.* (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)), "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). Moreover, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (immunity applies even when the judge is accused of acting maliciously and corruptly)).

All of the allegations against Justice Del Giudice and Judge McGuire concern their official acts in plaintiff's criminal cases. Because "judicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, even proof that these judges conspired with others to delay plaintiff's cases or to "railroad" him would be insufficient to impose liability upon them. Accordingly, the claims against the judicial defendants are dismissed.

Second, "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' . . . insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1991)). The conduct for which a prosecutor is absolutely immune includes "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). In addition, this absolute immunity "bars suit for malicious prosecution, even in the complete absence of even arguable probable cause." *Armatas v. Maroulleti*, No. 08-CV-310 (SJF)(RER), 2010 WL 4340437, at *12 (E.D.N.Y. Oct. 19, 2010) (citing *Bernard v. County of Suffolk*, 356 F.3d 495, 502-05 (2d Cir. 2004)); *see also Conte v. County of Nassau*, No. 06-CV-4746, 2010 WL 3924677, *16 (E.D.N.Y. Sept. 30, 2010) ("Assuming *arguendo* that there was no probable cause to continue the prosecution . . . , the County defendants are protected by absolute immunity with respect to the decision to continue the ongoing prosecution.").

In the complaint in this case, all of the allegations specifically relating to defendant Gough appear to relate to conduct intimately associated with the judicial phase of the criminal process. Most of these allegations involve conduct that occurred "[f]rom the start of Mr. Paige['s] trial to the end," Complaint at 63, all of which is clearly within the judicial phase. However, even the conduct that allegedly occurred before the Grand Jury and during pre-trial preparations is within the scope of prosecutorial immunity. *See Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (upholding lower court's decision to grant ADA's motion to dismiss on absolute immunity grounds where ADA allegedly suborned perjury and deliberately withheld exculpatory evidence from trial); *Bernard*, 356 F.3d at 506 (affirming dismissal on absolute immunity

9

grounds when the prosecutor allegedly knowingly presented perjured testimony to the grand jury). Accordingly, the claims against ADA Gough are dismissed.

Finally, with respect to Officer Perez, this Court notes that the principles underlying judicial and prosecutorial immunity "also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just – or possibly unjust – conclusion is equally indispensable." *Briscoe v. La Hue*, 460 U.S. 325, 345-46 (1983). In *Briscoe*, the Supreme Court expressly held that police officers have absolute immunity from liability for damages arising out of false testimony. In so ruling, the Supreme Court "acknowledged the danger that a police officer or other witness may provide purposefully false testimony and escape liability," *Rolon v. Henneman*, 517 F.3d 140, 145 (2d Cir. 2008) (citing *Briscoe*, 460 U.S. at 345), as well as "the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might . . . be unjustly convicted on the basis of knowingly false testimony by police officers." *Briscoe*, 46 U.S. at 345. However, the Court was concerned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," which might "deprive the finder of fact of candid, objective, and undistorted evidence." *Id.* at 333.

In light of the foregoing, it is clear that, to the extent that plaintiff's allegations against Officer Perez suggest that this police officer may have perjured himself during Mr. Paige's trial and in a prior, unrelated matter, *see* Complaint at 87, plaintiff cannot recover damages for this perjury. *See Briscoe*, 460 U.S. at 345-46. Moreover, because it is well established that mere threats of violence, even by a custodial officer, do not amount to constitutional violations, *Johnson v. Wigger*, No. 9:07-CV-0024 (FJS/GHL), 2009 WL 2424186, at *8 (Aug. 5, 2009); *Alnutt v. Cleary*, 913 F.Supp. 160, 165 (W.D.N.Y. 1996), it is also clear that allegations that

Officer Perez "gazed at [Mr. Paige] with such animosity" as to lead his grandmother to worry that Mr. Paige might be attacked, Complaint at 64, are insufficient to support a cause of action pursuant to 42 U.S.C. § 1983. Accordingly, these claims against Officer Perez are dismissed.

### *Failure to State a Claim*

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557 (citation and brackets omitted)).

Although plaintiff does not specify the basis for this Court's jurisdiction, this Court assumes, based both on plaintiff's repeated reference to federal constitutional violations and on the fact that all alleged defendants are state actors, that plaintiff is attempting to state claims under 42 U.S.C. § 1983 ("§ 1983"). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and that this conduct deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Furthermore, it is well settled that defendants named in a §1983 action must be personally involved in the alleged violations of the plaintiff's rights in order to be liable for damages under §1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A plaintiff cannot base a defendant's liability on *respondeat superior* or on "linkage in the . . . chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.

2003). Moreover, in order to recover from a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 124-25 (2d Cir. 2004).

In this case, plaintiff's complaint names the City of New York as a defendant in the caption, but does not allege specific acts or omissions by the City. While it is beyond question that four of the individual defendants named in this action are City employees, this fact alone does not suffice to establish the City's liability under § 1983. *See Hernandez*, 341 F.3d at 144. Similarly, the complaint does not suggest the existence of an officially adopted policy or custom that caused injury to Mr. Paige. To the contrary, the fact that the complaint specifically refers to defendant LaCoste as part of a "splinter group" of officers and other City employees suggests that these defendants' actions are contrary to the City's established policies and customs.

*Amendment of the Complaint*

For the reasons stated above, plaintiff's claims against defendants Del Giudice and McGuire are dismissed. In addition, those claims against defendant Gough which relate to conduct intimately associated with the judicial phase of the criminal process and those claims against Officer Perez which relate to his conduct or testimony at plaintiff's trial are dismissed. However, since it is unclear whether plaintiff seeks to raise additional claims against Gough and Perez, or has any basis to state a claim against the City of New York, this Court will, in an abundance of caution, afford plaintiff leave to amend the complaint in order to 1) clarify the basis for this Court's jurisdiction; 2) state the basis for his claims, if any, against the City of New York and provide facts suggesting that an officially adopted policy or custom deprived him of a

constitutional right; and 3) state the basis of any claims against defendants Gough and Perez, other than those dismissed herein.

The amended complaint need not, and should not, be lengthy. Rather, the complaint should contain (1) a short and plain statement of the grounds for the court's jurisdiction (for example, 42 U.S.C. § 1983), (2) a short and plain statement of the claim with respect to each defendant, alleging the facts on which liability is predicated, and (3) a demand for the relief sought. *See* Fed. R. Civ. P. 8(a). There is no need to include documentary evidence supporting the allegations in the complaint. In addition, plaintiff should omit claims which have already been raised in prior actions and those remedies which cannot be granted by this Court.

## *CONCLUSION*

For the reasons stated above, defendants Del Giudice and McGuire are dismissed from this action. In addition, this Court dismisses those claims against defendant Gough which relate to conduct intimately associated with the judicial phase of the criminal process and those claims against Officer Perez which relate to his conduct or testimony at plaintiff's trial. However, since it is unclear whether plaintiff is raising any other claims against Gough and Perez, or has a factual basis for a claim against the City of New York, the Court grants plaintiff leave to amend his complaint within thirty (30) days of the date of this Memorandum and Order to explain the basis of any remaining claims against defendants Gough, Perez and the City of New York. The complaint should 1) clarify the basis for this Court's jurisdiction; 2) state the basis for his claims, if any, against the City of New York and provide facts suggesting that an officially adopted policy or custom deprived him of a constitutional right; and 3) state the basis of any claims against defendants Gough and Perez, other than those dismissed herein.

If plaintiff elects to file an amended complaint, it shall be captioned, "Amended Complaint," and bear the docket number 10-CV-5469 (SLT)(RER). All further proceedings shall be stayed for thirty days or until plaintiff has complied with this Memorandum and Order. If plaintiff fails to file an amended complaint within the time allowed or to show good cause why he cannot comply, this action may be dismissed against defendants Gough, Perez, and the City of New York. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: January 6, 2011
Brooklyn, New York